**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LISELOTTE SCHROTH MORICE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10950** |
| **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** | **SECTION "C" (3)** |

**REPORT AND RECOMMENDATION REGARDING**
**INTERVENTION FOR ATTORNEY's FEES**

Before the Court is the intervention filed by David Band, Jr., PLC, seeking an award of

attorney's fees in the above captioned case. *See* Intervenor's Complaint (Doc. #47). The matter

was the subject of an oral hearing, following which the matter was deemed submitted for

determination. For reasons set forth below, **IT IS RECOMMENDED** that, with the exception of

reimbursement of the $800.00 for time spent "warehousing" plaintiff's case for a brief period of

time,[1] Intervenor's Complaint in Intervention be DENIED.

**BACKGROUND**

It is undisputed that, long after her case was filed in state court and removed to this court,

plaintiff, Liselotte Schroth Morici ("Morici"), signed a "Retainer Agreement and Power of Attorney"

together with the intervenor, David Band, Jr., ("Band") her second consecutive attorney. The

"Retainer Agreement" provides for 25% contingency recovery of the net amount collected *in the*

---

[1]The Court here notes that the Katrina-related coverage lawsuit filed on behalf Liselotte Schroth Morice was not even filed by David Band, Jr., PLC, but was in fact filed by William J. Luscy, III, as attorney for plaintiff, in the 24th Judicial District Court for the Parish of Jefferson, and removed by the defendant to this Court on December 15, 2006. *See* Notice of Removal filed December 15, 2006, State Court Pleadings filed August 28, 2006 [Doc. #1].

*event  that it is necessary to prepare for or go to trial.*[2]   The "Retainer Agreement" further states

that:

> "1) Suit has been filed and all costs have been paid by client [Morici] as of
> this date, including previous attorney's fees and court costs, THEREFORE in the
> event it is necessary to prepare for and/or go to trial, said Attorney shall receive as
> compensation for his services **25 percent** of the net amount collected, calculated
> AFTER payment of all expenses, including witness and expert fees (i.e., David
> Dillard), depositions, rental reimbursement and moving expenses and any other
> expenses which may accrue or are paid by Client....
> 5) In the event said Attorney determines the claims are without merit or has
> serious difficulties which render it improvident to proceed further, Attorney reserves
> the right to withdraw from representation by giving the client ten days written notice,
> however, in which case attorney is not entitled to any fees for his services."[3]

On November 27, 2007, the district judge granted plaintiff's motion to substitute David Band as her

attorney of record and, on November 28, 2007, the trial date was continued. [Doc. ## 13 and 14].

On  December 4, 2007, Band participated in a telephone conference with the district judge's case

manager pursuant to which a bench trial was set to commence on June 2, 2008.  Thereafter, nothing

was filed by Band on behalf of Morici; in fact, all filings and proceedings *on behalf of plaintiff*

following December of 2007 were filed/prosecuted by Shawn Deggins.[4]  Prior to the June 2, 2008

trial date, partial summary judgment was granted against plaintiff dismissing her flood claims.[5]  On

April 30, 2008, Shawn Deggins alone participated in the telephone conference with defense counsel

---

[2]*See* Retainer Agreement signed November 9, 2007 (italicized emphasis added) [Doc. #
61-3].

[3]*Id.*

[4]*See* Motion to Enroll filed January 21, 2008 [Doc. #16]; Joint Motion to Continue
Remaining PreTrial Deadlines, Pretrial Conference and Trial Date filed April 17, 2008 [Doc.
#27]; Memorandum in Opposition to the Defendant's Motion for Partial Summary Judgment
filed April 20, 2008 [Doc. #29].

[5]*See* Order signed May 2, 2008 [Doc. #37].

to reschedule the trial date to December 15, 2008.[6]

On June 11, 2008 (after partial summary judgment was granted), Band filed a Motion to Intervene for Attorney's Fees, claiming that *he had associated* Mr. Deggins on Morici's case and that *he had worked out a "50-50" fee sharing* arrangement with Deggins.[7]

A settlement conference was scheduled to commence on October 17, 2008[8] and, in the interim, defendant filed Motions for Partial Summary Judgment as to Plaintiff's Bad Faith Claims and Extra Contractual Claims and a Motion in Limine to Exclude Plaintiff's Expert Steve Hitchcock.[9] Long before the October 17, 2008 settlement conference was conducted and before the aforesaid the defendant's dispositive motions were filed, Band had filed a motion to withdraw and to intervene for his attorney's fee.

Plaintiff testified credibly that she fired Band for cause. There is no evidence of a *signed* contract by and between Deggins and Band evidencing an agreement to split any fee in Morici's case "50-50" or on the basis of any other percentage. It is clear from the testimonial evidence adduced at the hearing that Morici and Band were at literally odds almost from the outset. The language set forth in the "Retainer Agreement" itself amply demonstrates that both Morici and Band had difficulty foreseeing a productive attorney and client relationship. The Court here notes that, aside from filing a perfunctory boilerplate motion to enroll in November of 2007 and the December 4,

---

[6]*See* Scheduling Order dated April 30, 2008 [Doc. #36].

[7]*See* Motion for Leave to Intervene, Intervention filed by Band [Doc. ## 41 and 47].

[8]*See* Order setting Settlement Conference [Doc. #45].

[9]*See* Motion for Partial Summary Judgment re Bad Faith filed October 14, 2008 [Doc. #49]; Motion for Partial Summary Judgment re Extra Contractual Damages [Doc. #51]; and Motion in Limine filed October 14, 2008 [Doc. #53].

2007 scheduling conference, Band's sole participation in the case was securing a continuance of the trial date and *not trial preparation or participation in trial*.

Band admitted that Morici resigned her employment as his paralegal as early as November 28, 2007 and that *she* "somehow worked out a deal with Deggins."[10] Indeed, Morici's testimony that she was not even working for Band when she met Deggins and that she was never satisfied with Band's work is corroborated by intervenor's affidavit.[11]

## INTERVENOR's FEE APPLICATION

Band argues that it is not necessary for the undersigned to review or analyze the amount of time spent by him prosecuting Morici's case. Alternatively, and in the event that the Court determined that a review of the fees and costs incurred was necessary, Band presented a copy of his billing memorandum concerning Morici's file.[12] Intervenor submits that the value of *his* time amounts to no less than **$12,500.00** -- i.e., "one-half of the 25% of the $25,000 fee charged to Ms. Morici by Mr. Deggins."[13]

Addressing intervenor's argument that he was terminated without just cause, the record in this case admits otherwise. Indeed, in the parties' Joint Motion to Continue Deadlines and Trial Date filed April 17, 2008 [Doc. # 27], plaintiff represents:

> Plaintiff is no longer represented by attorney, David Band. Plaintiff has retained attorney, Shawn Deggins, who has only recently been independently retained as Plaintiff's third consecutive attorney of record. The transition of counsel for Plaintiff

---

[10] *See* Affidavit of Attorney to Support Application for Attorney's Fees at para. 6 [Doc. #61-4].

[11] *See id.* at para. 4 (referring to Morici's agitated concerns about a quick settlement).

[12] *See* Intervenor's Fee Application  [Doc. ## 61 and 61-2].

[13] *See* Application for Attorney's Fees at pp. 1, 7-8 [Doc. #61].

4

has made the discovery process arduous with respect to scheduling of depositions and inspections and the return on written discovery responses. Further, assurances made by Plaintiff's original attorney of record suggested that the substance of the Plaintiff's claims related strictly to the negligence claim against Defendant, Nora Vaden Insurance Agency, Inc. Upon submission of the expert report received on February 8, 2008, Plaintiff's theory of the case was considerably expanded to include wind claims on two properties as opposed to only a negligence claim related to the placement of one flood policy on one property. As a result, Defendants are unable to enter into serious settlement discussions with Plaintiff because almost no meaningful investigation of these claims can be completed prior to trial. Thus, Plaintiff is prejudiced by *prior counsel failing to address these issues with initial disclosures* and Defendants are forced to defend against claims that might otherwise be postured for compromise or resolution by motion practice.[14] (italicized emphasis added).

Most notably and insofar as "just cause" is concerned, the November 9, 2007 "Attorney Retainer" executed by Band and Morici specifically sets forth the provision that "time is of the essence", to wit:

"[B]oth [meaning Client and Attorney] understand that this may be a very stressful litigation especially if Attorney fails to undertake the case with seriousness and careful study of the facts in the case and due diligence, coupled with hi [sic] well-known aggressiveness and with haste and speed since time is of the essence -- water is leaking into her [meaning Morici's] house and undermining the foundation...." [Doc. #61-3 at p. 2].

## DISCUSSION

### Contingency Fee

This Court recognizes that contingency fee contracts are routinely used and that generally they are enforceable. *See Hall v. St. Paul Fire & Marine Ins., Co.*, 868 So.2d 910 (La. App. 5th Cir.), *writ. denied*, 872 So.2d 1087 (La. 2004). Nevertheless, it is well-settled that a prohibition against unreasonable attorney's fees exists under Louisiana law; such a prohibition cannot be abrogated by a valid contingency fee contract. *See Cent. Progressive Bank v. Bradley*, 502 So.2d 1017 (La.1987). Irrespective of the contractual arrangement between the client and the attorney,

---

[14] *See* Joint Motion to Continue Trial filed and e-served on *all counsel of record including David Band, Jr. on* April 17, 2009 [Doc. # 27].

the courts have the right to review contingency fee contracts to determine whether the fee is excessive. *State of Louisiana, Dep't. of Transp. & Dev. v. Williamson*, 597 So.2d 439, 441 (La. 1992). The court's focus is on whether the amount of fees is "reasonable." La. Rules of Prof. Conduct, 1.5.

This Court also recognizes the important role that contingency fee contracts serve in making legal services available to those without sufficient financial resources. *Saucier v. Hayes Dairy Prods., Inc.*, 373 So.2d 102, 105 (La. 1978); *O'Rourke v. Cairns*, 683 So.2d 697, 700 (La.1996). In the instant case, Band and Morici entered into a retainer/contingency agreement. Louisiana courts have long approved of the contingent fee contract to compensate attorneys. Under Louisiana law, contingency fee contracts, like all other attorney fee contracts, are subject to review and control by the courts, most notably for reasonableness. *Id.* (*citing* Model Rules of Professional Conduct Rule 1.5(a)).

The seminal decision of *Saucier v. Hayes Dairy Products, Inc*., 373 So.2d 102, 118 (La. 1979), discussed the awarding of attorney's fees to a discharged attorney who had been retained pursuant to a contingency contract. In *Saucier*, the Louisiana Supreme Court held that, in a case involving two attorneys with separate contingency fee contracts with the client, one attorney having been discharged without cause and the subsequent attorney having brought the case to judgment or settlement, the contingency fee is to be apportioned according to the services performed by each attorney. *Saucier*, 373 So.2d at 118. The proportionate services are to be determined according to the factors contained in Rule 1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

> "(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the questions involved,

and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent."

*Id*. Nevertheless, the amount prescribed in the contingency fee contract is the proper frame of reference for fixing compensation for the attorney prematurely discharged with*out* cause. *See O'Rourke v. Cairns*, 683 So.2d 697, 700 (La.1996).

In *O'Rourke v. Cairns*, 683 So.2d 697, 700 (La.1996), the Louisiana Supreme Court reaffirmed the factors and policies articulated in *Saucier*; however, the court modified the analysis for cases involving attorneys who have been discharged for cause. The court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *O'Rourke*, 683 So.2d at 704. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. *Id.* Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation. *Id.*

7

**Saucier/O'Rourke Analysis**

*Discharge for Cause*

The Court has determined that Band was terminated for cause. Louisiana courts recognize that the attorney-client relationship is far more complex than simply whether the attorney is performing his duties in the proper manner. *O'Rourke*, 683 So.2d at 703 n. 14. Consequently, under Louisiana law, a finding of discharge for cause does not simply depend upon a finding that the Rules of Professional Conduct were violated. *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 497 (La.App. 4 Cir.1997). Rather, Louisiana courts look to whether the client's confidence was eroded by the actions or inactions of the attorney. *See, e.g., O'Rourke*, 683 So.2d at 703.

Here, the record shows that former counsel/Intervenor (the second in a consecutive line of three attorneys) did nothing to advance the plaintiff's case. Indeed, plaintiff resigned from her employment with Intervenor within weeks of signing the "Retainer Agreement" and, at approximately the same time, Intervenor advised the plaintiff to seek psychiatric (as opposed to legal) help. Unquestionably, Band was terminated for cause *in writing*. *See* Parties' Joint Motion to Continue [Doc. #27].

At the February, 2009 hearing, plaintiff's representative painstakingly pointed out discrepancies which appear in the billing summary submitted by intervenor, including exorbitant charges for drafting, viewing, reviewing and filing *deficient* boilerplate documents which were never corrected. Band has failed to prove by a preponderance of competent evidence his claim for fees and costs in the amount of $12,500.00. Band has not seen fit to address the discrepancies identified by Morici. The Court finds ample reason to question the accuracy of Band's records.

Addressing Band's rate charged in the amount of $250.00 per hour, this Court agrees that

8

the rate is reasonable considering counsel's experience; however, such an "attorney's fee" is not properly charged for secretarial tasks such making copies or for due diligence performed prior to entering any agreement to represent the plaintiff or for viewing and reviewing on multiple occasions the same routine but deficient filing.

Band has not made an effort to justify his failure to exercise billing judgment and to excise unproductive or duplicative time billed to the client. Aside from prosecuting his intervention, Band did little to advance plaintiff's case.

The nature of the reasons for Band's discharge, like all of the other factors discussed hereinabove, cut against a substantial *quantum meruit* award in favor of plaintiff's former counsel. The inaccuracy of the charges appended to the application for fees makes a line by line analysis or even a percentage reduction of fees charged speculative at best. On this record, it is clear that former counsel exercised no "billing judgment" whatsoever.

### Fee Splitting is Inappropriate

There is no enforceable "fee splitting agreement" in this case between Band and Deggins. Band was the second of three consecutive attorneys who represented Morici in this particular matter, which blossomed into an entirely different case after Band was terminated for cause.[15] Band was not retained until November 9, 2007 and Deggins commenced representing plaintiff sometime after January 1, 2008, well-after plaintiff had resigned her employment with Band's law firm and severed all ties with said former counsel. Clearly, Band's attorney client relationship with Morici ended in December, 2007 -- i.e., after she resigned her employment with Band. No evidence suggests that Band remained responsible to Morici after December, 2007, much less throughout the

---

[15]*See* Note 14, *supra,* and accompanying text.

suit until settlement in October of 2008. Moreover, there is no competent evidence upon which to base a finding of an agreement between Band and Deggins to enter a joint venture agreement to share equally any fees earned in connection with the successful conclusion of plaintiff's case or any other case for that matter.

Rule of Professional Conduct Rule 1.5(e) provides:

> A division of fees between lawyers who are not in the same firm may be made only if: (1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) The client is advised of and does not object to the participation of all the lawyers involved; and (3) The total fee is reasonable.

*Id.* There is no written agreement with Morici whereby each lawyer (Band and Deggins) assumed joint responsibility for plaintiff's representation. Band and Deggins were never partners in the same firm, much less at the time when Deggins was hired by Morici to prosecute *her wind damage claims with respect to two different properties*. Finally, neither Band nor Deggins suggest that there was an agreement for a division of fees porportionate to the services rendered by each. Insofar as litigation costs are concerned, the evidence suggests that, at all times, Morici paid all of her own costs and that at no time did Band ever "front" any of Morici's costs in this case. Indeed, Band's only claim in this intervention is for attorney's fees -- *i.e.*, 50% of $25,000.00.

## CONCLUSION AND RECOMMENDATION

Based upon consideration of all of the factors set forth above, this Court's familiarity with former counsel's failure to prosecute the plaintiff's claims and the failure of proof as to *attorney's* fees *earned* by intervenor in this case,

**IT IS RECOMMENDED** that, with the exception of reimbursement of $800.00 for time spent "warehousing" plaintiff's case for a short period of time -- *i.e.*, November and December 2007

-- Intervenor's Complaint in Intervention be DENIED.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  29th  day of July,  2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**